UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

CARLTON JAMES RAPOZA, JR.,

        Petitioner,

v.

CONNIE HORTON,

        Respondent.

_____/

Case No. 2:20-cv-91

Honorable Maarten Vermaat

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. The parties have consented to the conduct of all proceedings in this case, including entry of a final judgment and all post-judgment motions, by a United States Magistrate Judge. (ECF Nos. 10, 13.)

Petitioner Carlton James Rapoza, Jr. is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Following a jury trial in the Kalkaska County Circuit Court, Petitioner was convicted of three counts of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b, and one count of sodomy, in violation of Mich. Comp. Laws § 750.158. On April 4, 2017, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to concurrent prison terms of 47 to 75 years for each CSC-I conviction and 6 to 25 years for the sodomy conviction.

On June 22, 2020, Petitioner, with the assistance of counsel, filed his habeas corpus petition raising three grounds for relief, as follows:

    I.    Petitioner was denied his right to confront witnesses and the evidence brought against him.

>   II. The trial court erred by overruling trial counsel's objection to Dr. Cynthia Smith's hearsay testimony regarding her interview of the complaining witness.
>
>   III. Allowing Amanda Everett[1] to testify before the prosecution untimely complied with a timely request for the Michigan Department of Human Services, Child Protective Proceedings file without a witness denied Defendant's Sixth Amendment right to confront Everett and to a proper discussion of the file and admission of the evidence contained in the file.

(Pet., ECF No. 1, PageID.7, 9, 12.) Respondent asserts that Petitioner's claims are meritless.[2] (ECF No. 5.) For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, dismiss his petition for writ of habeas corpus.

## Discussion

### I. Factual Allegations

The Michigan Court of Appeals described the facts underlying Petitioner's prosecution as follows:

>   Rapoza had parenting time with his son on a regular basis. In late January 2016, the boy's mother noticed him in bed with a blanket pulled over his head when he should

---

[1] Petitioner refers to "Amanda Everette" throughout his § 2254 petition. The trial transcript, however, indicates that the proper spelling of this individual's last name is Everett. The Court, therefore, uses that spelling throughout this opinion.

[2] Respondent also contends that Petitioner's first two claims are unexhausted and that his third is procedurally defaulted. (ECF No. 5.) Respondent does recognize, however, that a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Furthermore, the Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."); *see also Overton v. MaCauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix* and *Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997)). Here, rather than conduct a lengthy inquiry into exhaustion and procedural default, the Court finds that judicial economy counsels that the better approach is to go directly to a discussion of the merits of Petitioner's claims.

2

> have been sleeping. When she pulled back the blanket, she saw the child playing with the tag on a stuffed animal in a way that appeared odd to her. She asked him what he was doing and why. The child initially said, "Nothing," and "I can't tell you." The child's mother insisted that he was doing something because he was not asleep. The child told her that Rapoza "sticks his private part in his butt." The child's mother asked him how it happened, and he told her that Rapoza put "him on his lap and puts his private part in his butt" when the other children were not around.
>
> The next day, the child's mother took him in for a medical examination by Physician's Assistant Michelle Green. Green was unable to diagnose the child because he would not tell her anything. Green recommended that the child's mother take him in for a more specialized examination by a pediatrician. Dr. Cynthia Smith, a pediatrician with experience in interviewing children who are alleged victims of sexual abuse, examined the child. During the examination, the child told Dr. Smith that Rapoza pulled his pants down and "put his wiener . . . sticked it in."
>
> Using an anatomically correct doll at trial, the child identified the penis and the anus as private parts. The child testified that Rapoza touched his private parts and "put him [sic] wiener in my butt." The child testified that this happened at night in the summertime when everyone else in the house was asleep. According to the child, he told Rapoza that this was not a good idea, but Rapoza told the child he would be grounded if he did not comply. The child testified that Rapoza told him not to tell anyone. The child testified that he was afraid of Rapoza.
>
> After the prosecution rested, the defense called Carly Bentley, a forensic interviewer. Bentley interviewed the child, and the forensic interview was recorded and videotaped. Bentley used open-ended questions regarding the allegations of sexual abuse. When Bentley asked the child about sexual abuse, what he told Dr. Smith, and if anyone ever asked him to keep a secret, the child responded that he did not know. The child denied wanting to talk to Bentley about anything. Bentley testified that it is not uncommon for children to "freeze up." Bentley said that the child's body language changed when she changed from neutral topics to sexual topics. His shoulders sunk, and he looked at the ground, suggesting that he was uncomfortable.

(ECF No. 6-13, PageID.843–44.)

Over the course of three days, the jury heard testimony from the victim's mother, Dr. Smith, the victim, Ms. Bentley, a Michigan State Police trooper, Petitioner's girlfriend, and the victim's preschool teacher. (ECF Nos. 6-3, 6-4.) The jury returned its guilty verdict after about four hours of deliberation. (ECF No. 6-5.) Petitioner appeared before the trial court for sentencing on April 4, 2017. (ECF No. 6-7.)

3

After judgment was entered, Petitioner moved for a new trial, and a *Ginther*[3] hearing, raising several issues, including the three issues set forth above. On August 7, 2017, the trial court denied Petitioner's motion. (ECF No. 6-12.) Petitioner, with the assistance of the same counsel who has appeared to represent him in this habeas proceeding, then appealed to the Michigan Court of Appeals, raising the same issues. On June 7, 2018, the court of appeals affirmed Petitioner's convictions and sentences. (ECF No. 6-13, PageID.843–50.) Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court, again raising the same issues. (ECF No, 6-14, PageID.1071–79.) By order entered July 2, 2019, the supreme court denied leave to appeal. (*Id.*, PageID.1070.) This § 2254 petition followed.

## II.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020)

---

[3] In *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), the Michigan Supreme Court approved the process of remanding to the trial court for an evidentiary hearing when an appellate has raised claims of ineffective assistance of counsel that require development of a record.

4

(quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise

5

contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

**III.     Discussion**

Petitioner asserts three grounds for relief. Petitioner first claims that he was denied his right to confront witnesses and the evidence brought against him. (ECF No. 1, PageID.7.) In his second ground, Petitioner contends that the trial court erred by overruling counsel's objection to Dr. Smith's "hearsay testimony regarding her interview of the complaining witness." (*Id.*, PageID.9.)

Petitioner's first two grounds for relief are based upon the admission of hearsay testimony and also suggest Sixth Amendment Confrontation Clause issues. With respect to these grounds for relief, the court of appeals concluded that: (1) the trial court did not err in admitting hearsay statements that the victim made to his mother pursuant to the "tender years exception," Rule 803A of the Michigan Rules of Evidence; and (2) the trial court did not err in admitting hearsay statements that the victim made to Dr. Smith under the medical treatment exception, Rule 803(4) of the Michigan Rules of Evidence. (ECF No. 6-13, PageID.844–47.)

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id*. at 67–68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). The court of appeals' conclusions that the statements in question were admissible under the applicable rules setting forth hearsay exceptions are, therefore, axiomatically correct.

7

It is possible that an evidentiary ruling—even a ruling that is axiomatically correct under state law—still violates due process. State-court evidentiary rulings can rise to the level of due process violations if they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation marks omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Moreover, under AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). Petitioner has not met this difficult standard. There is nothing inherent in the admission of hearsay testimony generally that offends fundamental principles of justice. In fact,

> [t]he first and most conspicuous failing in [arguing that hearsay testimony violates due process] is the absence of a Supreme Court holding granting relief on [that] theory: that admission of allegedly unreliable hearsay testimony violates the Due Process Clause. That by itself makes it difficult to conclude that the state of appeals' decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

*Desai v. Booker*, 732 F.3d 628, 630 (6th Cir. 2013) (quoting 28 U.S.C. § 2254(d)). Here, as in *Desai*, the court of appeals held that the evidence "fell within . . . established hearsay exception[s]," in this case, the "tender years exception" pursuant to Michigan Rule of Evidence 803A and the medical treatment exception pursuant to Michigan Rule of Evidence 803(4). *Id.* at 631. "Where, as here, a state court reasonably rejects a rule urged by the claimant but yet to be adopted by the

8

Supreme Court, it does not unreasonably apply established federal law." *Id.* at 632 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

While hearsay itself is not constitutionally impermissible, Petitioner's first two grounds for relief do raise the specter of a violation of the Confrontation Clause. The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. Const. amend VI; *Pointer v. Texas*, 380 U.S. 400, 403–05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). Here, however, the victim testified at Petitioner's trial, and Petitioner, through counsel, had the opportunity to cross-examine him. Thus, any Confrontation Clause issues suggested by Petitioner in his first two grounds for relief are meritless. Petitioner, therefore, is not entitled to habeas relief on these grounds.

Petitioner's third ground asserts that his Sixth Amendment Confrontation Clause rights were violated when Petitioner was not permitted to recall and cross-examine Amanda Everett regarding a Michigan Department of Human Services, Child Protective Proceedings file. (*Id.*, PageID.12.) Petitioner contends that he was unable to confront Everett about the contents of the file and have a "proper discussion of the file and admission of the evidence contained in the file." (*Id.*) Petitioner contends that he had "filed several DHS complaints against Everett" and had "asked for custody of his son and had informed Everett of his intentions." (*Id.*) These statements were contained in the "records furnished after Everett testified," and the trial court denied Petitioner's request to recall her for further cross-examination. (*Id.*)

9

After witnesses for the defense testified, Petitioner's attorney requested a bench conference to "approach a topic . . . about a potential witness." (ECF No. 6-4, PageID.593.) During that conference, counsel noted that the day before, he was "handed four Child Protective Services investigation reports involving Amanda Everett" and the victim. (*Id.*, PageID.594.) Counsel noted that he had anticipated a need to recall Amanda Everett and stated that he had not read the reports when she testified. (*Id.*) Counsel states that the reports indicated that Everett: (1) had concerns about placing the victim into childcare because "she was concerned about child molesters in day care"; and (2) told Child Protective Services that she was concerned "about possible sexual abuse of [the victim] stemming from her sister." (*Id.*, PageID.595.) Moreover, there was a report alleging that the victim was found .7 miles "from his home walking down County Road 571" and that police confronted Everett about the incident. (*Id.*, PageID.595–96.) Counsel sought to recall Everett, noting a "big concern here is whether there's an influence from this mother as the initial outcry witness." (*Id.*, PageID.596.) Counsel went on to note that there were allegations that the victim had been shaken. (*Id.*, PageID.597.)

The prosecutor responded that counsel's request to recall the mother to ask about the reports amounted to "character assassination." (*Id.*, PageID.599.) He indicated that the reports "basically paint[ed] her as a careless parent or an overly concerned parent." (*Id.*) The prosecutor argued that there was "nothing that goes to her character o[r] her truthfulness or might indicate that she in this case lied or convinced [the victim] to lie about the abuse." (*Id.*) The prosecutor also noted that nothing in the reports was relevant to the overall question of whether Petitioner had abused the victim. (*Id.*)

The trial court evaluated the statements contained in the reports under Michigan Rule of Evidence 403, balancing "the probative value of that evidence and any prejudicial effect." (*Id.*,

10

PageID.600.) The court concluded that Everett's concern about child molesters at day care was not relevant because he did not know "the degree of her concern" and that such concern is "relatively natural . . . with any parent who's leaving their children in the care of strangers." (*Id.*, PageID.601.) The judge noted that the 2012 incident involving Everett's sister was "marginally more relevant because that does appear at least based on the description to be somewhat of an accusation of sexual abuse by another relative." (*Id.*) However, there was "no way to determine whether those were really false accusations or whether it was true or not." (*Id.*, PageID.602.) As to the 2014 incident when the victim was found away from home, the trial court noted that the only part that was relevant was that "he apparently left home which there's been testimony that that activity only happened when he had to go to the father's or when the father was going to pick him up from school." (*Id.*) Overall, the judge concluded that the jury would give "undue weight" to the statements in the reports, causing prejudice to the prosecution's case, and that such prejudice "outweighs [any] very limited relevance of three incidents to the ultimate issue in this case." (*Id.*)

> In rejecting Petitioner's claim, the court of appeals wrote:
>
> Rapoza argues that the prosecution's failure to produce Child Protective Services (CPS) reports showing that the child's mother previously alleged that another individual sexually abuse[d] the child violated *Brady v. Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), and denied him his right of confrontation because the child's mother had already testified by the time defense counsel received the report. Rapoza did not raise the issues of a *Brady* violation or a denial of his right to confrontation in the trial court. Therefore, we review the unpreserved constitutional issues for plain error. *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007). To avoid forfeiture under the plain error rule, the defendant must demonstrate that an error occurred, the error was plain, and the plan error affected substantial rights. *Carines*, 460 Mich at 763. "The third prong requires a showing of prejudice, which occurs when the error affected the outcome of the lower court proceedings." *People v Putnam*, 309 Mich App 240, 243; 870 NW2d 593 (2015).
>
> On appeal, Rapoza briefly refers to *Brady*, cites the *Brady* factors, and then asserts that the CPS reports "contained exculpatory evidence that should have been disclosed by the prosecution." He does not identify the allegedly exculpatory evidence. He then announces that he "was inarguably denied his right to confront

11

[the victim's mother] with her false claims [of] sexual abuse made against other adults," without explaining how each of the factors is met or citing any authority establishing that the facts in this case amount to such a violation. Under these circumstances, we consider this issue abandoned. See *Matuszak*, 263 Mich App at 59.

Nonetheless, Rapoza's argument is without merit. "The Supreme Court of the United States held in *Brady* that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2014), quoting *Brady*, 373 US at 87. The three components of a *Brady* violation are that: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *Chenault*, 495 Mich at 150. "The government is held responsible for evidence within its control, even evidence unknown to the prosecution[.]" *Id.* "To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id* (quotation marks and citation omitted). "The question is whether, in the absence of the suppressed evidence, the defendant received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Chenault*, 495 Mich at 150–151 (quotation marks and citation omitted).

In this case, there was no *Brady* violation because the reports were not suppressed. The defense received the reports on the first day of trial. Moreover, assuming that the reports were somehow "favorable" to Rapoza under *Brady*, they do not meet the test of materiality. Rapoza asserted below that the reports could have been used to impeach the credibility of the child's mother. After having an opportunity to review the reports and hear argument from both parties, however, the trial court refused to allow Rapoza to cross-examine the child's mother about the reports because the court found the marginal probative value of the evidence substantially outweighed by the danger of unfair prejudice under MRE 403. Because the evidence was excluded for an appropriate reason, and because Rapoza has not challenged that evidentiary ruling on appeal, Rapoza has not shown that the result of the proceeding would have been different had the reports been disclosed sooner.

(ECF No. 6-13, PageID.847–48.)[4]

---

[4] Petitioner's challenge regarding the CPS reports in the state trial courts and appellate courts involved two distinct components: a *Brady* violation based upon the prosecution's alleged failure to timely produce the reports and a Sixth Amendment challenge based on the trial court's refusal to permit Petitioner to recall and cross-examine the victim's mother regarding the reports. (Pet'r's Appeal Br., ECF No. 6-13, PageID.956–957.) Based on Petitioner's statement of the issue in this Court, the Court concludes that he is now focused entirely on the Confrontation Clause issue. The appellate court's analysis of *Brady* is recounted because that court's determinations regarding

The Supreme Court long has read the Sixth Amendment's Confrontation Clause right as securing an adequate opportunity to cross-examine adverse witnesses. *United States v. Owens*, 484 U.S. 554, 557 (1988) (citing *Mattox v. United States*, 156 U.S. 237, 242–43 (1895), and *Douglas v. Alabama*, 380 U.S. 415, 418 (1965)). As the Supreme Court early held,

> The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Mattox*, 156 U.S. at 242–43, *quoted in California v. Green*, 399 U.S. 149, 157–58 (1970). While the Confrontation Clause guarantees an opportunity for effective cross-examination, it does not guarantee "'cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679; *see also United States v. Adams*, 722 F.3d 788, 834 (6th Cir. 2013); *King v. Trippett*, 192 F.3d 517, 524 (6th Cir. 1999).

The trial court concluded that defense counsel's proposed cross-examination was inadmissible under Michigan Rule of Evidence 403 because its probative value was outweighed

---

materiality and prejudice necessarily inform its resolution of the significance of the trial court's refusal to permit Petitioner to recall the witness and review the CPS reports with her.

13

by the danger of unfair prejudice. (Trial Tr. II, ECF No. 6-4, PageID.600–602.) The Michigan Court of Appeals agreed. (Mich. Ct. App. Op., ECF No. 6-13, PageID.848) (stating "the evidence was excluded for an appropriate reason . . . ."). That state court determination of a state law issue binds this Court. *Wainwright,* 464 U.S. at 84 (1983); *Bradshaw,* 546 U.S. at 76. Moreover, Petitioner does not challenge the trial court's factual determinations regarding the probative value of the evidence or the prejudice that would follow its admission.[5] Petitioner does not present any evidence, much less clear and convincing evidence, to overcome the state court's factual determinations. This Court must presume, therefore, that the proposed cross-examination was more prejudicial than probative. That presumption compels the further conclusion that the trial court's limitation on cross-examination was neither contrary to, nor an unreasonable application of, clearly established federal law, because *Van Arsdall* specifically authorizes cross-examination limits based on prejudice and confusion of the issues.

Accordingly, Petitioner is not entitled to relief on his third habeas ground.

---

[5] Indeed, Petitioner has never properly developed this argument. Petitioner's supplemental brief for motion for new trial and his appeal brief are the only legal arguments Petitioner offers this Court. The appellate brief is the only argument that addresses the confrontation issue. Petitioner's particularly succinct appellate argument is only two paragraphs long. (Pet'r's Appeal Br., ECF No. 6-13, PageID.956–957.) The focus of the argument was the alleged *Brady* violation, and the court of appeals concluded that the argument lacked substance, consisting of nothing more than a recitation of the standard and a conclusory statement that his rights were violated. (Mich. Ct. App. Op., ECF No. 6-13, PageID.847.) The argument was so scant that the court of appeals considered the issue abandoned. (*Id.*) The part of the argument that might be construed to set out the Confrontation Clause challenge is even less illuminating: "Defendant was inarguably denied his right to confront Everett with her false claims [of] sexual abuse made against other adults." (Pet'r's Appeal Br., ECF No. 6-13, PageID.957.)

**IV.     Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**Conclusion**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated: July 14, 2022

/s/ *Maarten Vermaat*
Maarten Vermaat
United States Magistrate Judge